**NEW YORK LIFE INSURANCE COMPANY, Appellant (Plaintiff Below),**

v.

**Chester O. HENRIKSEN, Sr., Lily A. Henriksen, Lily A. Myers, Gloria Cook, and Virginia Henriksen, Appellee (Defendants Below),**

**Lily A. Henriksen as Administratrix of the Estate of Chester O. Henriksen, Jr., Appellee (Intervenor Defendants Below).**

**Lily A. HENRIKSEN and Lily A. Henriksen as Administratrix of the Estate of Chester O. Henriksen, Jr., Appellee (Counterclaimants Below),**

v.

**NEW YORK LIFE INSURANCE COMPANY, Appellant (Counterdefendant Below).**

No. 3–680A168.

Court of Appeals of Indiana, Third District.

Jan. 28, 1981.

Joel C. Levy, Glenn R. Patterson, Singleton, Levy & Crist, Highland, for appellant.

Robert A. Sowinski, Sowinski & Easterday, Joseph V. Simanski, Feagler & Simanski, Plymouth, for appellees.

STATON, Judge.

Lily A. Henriksen, as administratrix of the estate of Chester O. Henriksen, Jr., brought an action for the recovery of proceeds[1] from a New York Life Insurance Company (New York) policy on the life of her deceased son. The trial court granted a summary judgment for Ms. Henriksen, as administratrix, and ordered New York to pay the policy proceeds to her son's estate. It further granted a summary judgment for Ms. Henriksen, in her individual capacity as the "Owner's Designee" of the policy, and awarded the unearned premiums in the amount of $2,656.50 to her.

On appeal, New York asks whether the trial court erred in granting the summary judgment as to the estate and in concluding that the insurance company was liable to the estate of Chester O. Henriksen, Jr. for the payment of the proceeds of the life insurance policy.

We reverse.

In February of 1965, New York issued a life insurance policy to Chester O. Henriksen, Sr. in the amount of $10,000 with an accidental death benefit of $10,000. The policy, owned solely by Henriksen, Sr., was issued on the life of his son, Chester O. Henriksen, Jr. Both Henriksen, Sr. and his wife, Lily, were designated as "first beneficiaries" on the policy. Ms. Henriksen was named as the "Owner's Designee." Shortly after putting the policy into effect, Henriksen, Sr. paid a $3,100 premium which fully paid up the policy through December of 1994.

On September 26, 1974, Henriksen, Sr., as the policy owner, executed a change of beneficiary wherein Lily, the mother of the insured, was removed as a beneficiary under the policy, but she was not removed as the "Owner's Designee." At all times thereafter, until the death of Henriksen, Jr., on April 15, 1976, his father was the sole beneficiary of the policy.

On October 7, 1976, Henriksen, Sr. was found guilty by a jury in Wyoming of the voluntary manslaughter[2] of his son, the insured.

■ In Indiana, a beneficiary in a life insurance policy who intentionally and wrongfully causes the death of the insured forfeits all rights he may have under the policy. *Stacker v. Mack* (1955), 126 Ind. App. 95, 130 N.E.2d 484, 487; *Beene v. Gibraltar Industrial Life Insurance Company* (1945), 116 Ind.App. 290, 63 N.E.2d 299, 300. He is, therefore, ineligible to receive the proceeds as a beneficiary of the life insurance policy. *United Farm Bureau Family Life Ins. v. Fultz* (1978), Ind.App., 375 N.E.2d 601, 608. Such an exclusion is based upon public policy and grounded in the maxim that a person should not be allowed to profit from his own wrong. *Stacker, supra,* 130 N.E.2d at 487.

Despite the father's status as owner and sole beneficiary under the New York policy,

---

1. Ms. Henriksen brought this action as a counterclaim against the New York Life Insurance Company which had, by way of interpleader, deposited the sum of the unearned premiums with the court and requested the court to "establish the interests and rights of the parties to all of the unearned premiums on this policy."

2. Henriksen, Sr. was charged and found, by the jury, to have committed this crime "unlawfully, purposely and with premeditated malice."

he is clearly precluded from recovering the policy proceeds. It appears that the question of entitlement to the proceeds in this situation is one which has not been addressed in Indiana.

■ Where there is but one beneficiary designated in a life insurance policy and such beneficiary murders the insured, the general rule is that the insurer remains liable. *Draper v. C. I. R.* (1st Cir. 1976), 536 F.2d 944; *Neff v. Massachusetts Mut. Life Ins. Co.* (1952), 158 Ohio St. 45, 107 N.E.2d 100; 27 A.L.R.3d 794, *Insurance—Homicide by Beneficiary*, § 12 (1969) and cases cited therein. The rule, as stated in The American Law Institute Restatement of the Law of Restitution, § 189(1) is:

"If the beneficiary of a life insurance policy murders the insured, he holds his interest under the policy upon a constructive trust for the estate of the insured."

■ There are three situations, however, in which the insurer is relieved of all liability, including to the insured's estate, under the contract. They are as follows: 1) where the policy provides that the death of the insured in such a fashion shall be an excepted risk; 2) where the policy is fraudulent in its inception; and 3) where no one except the beneficiary or one claiming through him has any interest in the policy. *Boatwright v. Hartford Ins. Group* (1978), 64 A.D.2d 262, 409 N.Y.S.2d 860; *Draper, supra*; Restatement of Law of Restitution, *supra,* Comment (e); 5 SCOTT, THE LAW OF TRUSTS, § 494.2 (3rd ed. 1967); 27 A.L.R.3d 794, *supra,* § 13 and cases cited therein. In the absence of one of these exceptions, the proceeds of the policy are not forfeited to the insurance company, but rather are payable to the estate of the murdered insured. 1A APPLEMAN, INSURANCE LAW AND PRACTICE, § 382 (1st ed. 1965).

■ On appeal, New York argues that the trial court was in error to award the policy proceeds to the son's estate. It urges us to conclude that because the policy was a contract solely between the company and Henriksen, Sr., no other person had any interest in the policy at the time of the insured's death. This we cannot do without an analysis of the interest held by Ms. Henriksen.

New York makes much of the lack of indices of the deceased's ownership or interest[3] in the policy and points to *Boatwright, supra,* as controlling precedent. There, a New York Life Insurance Company policy[4] provided that the murderer was both the "owner" and the sole "beneficiary." This policy did not explicitly make provision for the lack of a designated beneficiary. It specified only that the beneficial interest in the proceeds should vest in the owner if the last surviving beneficiary predeceased the insured.

The New York Court was quick to note that even with a construction of the policy which would give the proceeds to the "owner," the murderer "remains the owner, and *ipso facto,* the beneficiary and his interest must be invalidated as against public policy... The only payee under the language ... is the murderer, who is disqualified from taking." *Boatwright, supra,* 409 N.Y. S.2d at 861. Concluding that no one, other than the murderer, had any interest in the policy, the Court relieved the insurance company of any liability on the policy.

We would consider the analysis in *Boatwright* as dispositive were it not for a provision in the policy-at-bar of an "Owner's Designee." Such an indorsement was apparently not present in the *Boatwright* policy, and we must consider its effects upon the release of New York from liability.

As "Owner's Designee", Ms. Henriksen clearly had an interest in the policy. Pertinent portions of the contract provided:

---

**3.** *See Draper v. C. I. R.* (1st Cir. 1976), 536 F.2d 944, for a discussion of the possession, by the insured, of legal or equitable interests in the insurance policy.

**4.** The New York Life Insurance Company policy in *Boatwright, supra,* involved some of the same provisions as in the case at bar. The "Death of Beneficiary" provision in both policies is identical.

"OWNER'S DESIGNEE

"In accordance with the Applicant's request in the application for this policy, <u>LILY A. HENRIKSEN, MOTHER</u>, of the insured, has been designated as 'Owner's Designee' under the policy, subject to the Arrangements for Transfer of Ownership provisions, the same as if designed by the Owner."

\*   \*   \*   \*   \*   \*

"8.   Arrangements for Transfer of Ownership

The Owner, by written request satisfactory to the Company accompanied by the policy for appropriate indorsement, can arrange for a transfer of his entire ownership

\*   \*   \*   \*   \*   \*

"(b) to an Owner's Designee who, upon the death of the designating Owner before his rights of ownership terminate, will become the new Owner. Any designation of Owner's Designee can be terminated or changed from time to time in a similar manner."

\*   \*   \*   \*   \*   \*

"Death of Beneficiary. If the last surviving beneficiary for any death benefit proceeds payable under this policy predeceases the Insured, the beneficial interest in such proceeds shall vest in the Owner . . . ."

Ms. Henriksen's interest as "Owner's Designee" had not vested. It was not one wherein there was an immediate right of present enjoyment or a present fixed right of future enjoyment. *Bailey v. Bailey* (1967), 142 Ind.App. 119, 232 N.E.2d 372, 378. Her interest, contingent upon the death of her former husband, was merely an expectation of an uncertain event, subject to change by the policy owner.

The ownership rights and Ms. Henriksen's entitlement to the proceeds could have arisen only "upon the death of the designating Owner." Had there been an intent for her to assume all benefits, rights and privileges of the owner upon any incapacity, while

alive, the policy would have so stated. Ms. Henriksen's former husband is not dead; he is incarcerated for the crime of killing his son. While he may be disenfranchised during his imprisonment, he cannot be stripped of all rights.[5] The law does not demand the forfeiture of his ownership rights in the policy, but rather, that he, as sole beneficiary, be barred from recovering the proceeds.

According to the policy terms, the "Owner's Designee" would become the new Owner "upon the death of the designating Owner." This event did not occur. Ms. Henriksen's interest is not sufficient to justify the award of the policy proceeds to her in her individual capacity.

Henriksen, Sr. was the sole owner and the sole beneficiary of the policy. He bought it, paid up the premiums until 1994 and retained all ownership benefits, rights and privileges. There was no person, other than the murderer, who had any interest in this policy. We conclude, therefore, that the insurer should be relieved of any liability on the policy proceeds.

Judgment reversed.

GARRARD, J., concurs.

HOFFMAN, P. J., dissents with opinion.

HOFFMAN, Presiding Judge, dissenting.

I dissent. When Henriksen, Sr. intentionally and wrongfully caused the death of the Insured, he forfeited not only his right to the proceeds as beneficiary but his *ownership* rights as well. Quoting from *Beene v. Gibraltar Industrial Life Ins. Co.* (1945), 116 Ind.App. 290, at 292, 63 N.E.2d 299, at 300, the Court in *Stacker v. Mack, Admrx., etc., et al.* (1955), 126 Ind.App. 95, at 102, 130 N.E.2d 484, at 487 stated:

" 'Based solidly on the requirements of public policy and fortified by the maxim that a person should not be permitted to profit from his own wrong, the rule of law is firmly established that a beneficiary in a life insurance policy who intentionally and wrongfully causes the death

5. See *Neff, supra*, for an exploration of the "civil death" concept.

**150**

of the insured forfeits *all rights* which he may have in or under the policy of insurance. See 29 Am.Jur., p. 979, § 1310 et seq.'" (Emphasis added.)

Once it is determined that the wrongdoer may not receive or retain the proceeds the question arises as to who is so entitled. This determination primarily involves ascertaining the intention of the owner. The policy provided that if Henriksen, Sr. died before his ownership rights terminated, the owner's designee, Lily, would become the new owner. In actuality there occurred the only other possible contingency in which the owner would be under a disability equivalent to death. The fact that his ownership terminated in a manner other than he anticipated should not defeat his further intention that Lily succeed to his ownership rights. Moreover the general rule that precludes one from profiting by his own wrong should not be invoked in such a way as to award a windfall to the insurance company.